# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 9, 2012

Lyle W. Cayce
Clerk

No. 11-20464
Summary Calendar

DORIAN HARRISON,

Plaintiff–Appellant,

v.

CORRECTIONS CORPORATION OF AMERICA,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-1291

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Dorian Harrison appeals the district court's grant of summary judgment in favor of Corrections Corporation of America (CCA) on his claims of race discrimination and retaliation. Because we agree with the district court's conclusion that Harrison failed to establish a prima facie case for his claims, we affirm the district court's grant of summary judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20464

**I**

Harrison, an African-American, is currently employed by CCA as a detention officer at its Houston Processing Center. CCA hired Harrison as a detention officer in 2004, and in 2006, he was transferred to the maintenance department. Harrison's claims of race discrimination and retaliation originate from actions alleged to have taken place in 2008 while he was working in the maintenance department. He alleges that, at that time, another CCA employee, Louis Story, directed a racial slur at him in the presence of another CCA employee, Fred Carlos.

In the grievance Harrison submitted on May 21, 2008, he complained that Story had said, "Hello my nigger friend, I'm pimping you!" CCA conducted an investigation and confirmed that the incident had occurred. CCA's Grievance Response indicated that the "comment came about after a long period of 'inappropriate bantering' among those involved." In response to the investigation, Warden Robert Lacy Jr. recommended that Story be suspended for three days and undergo additional training. On June 10, 2008, Warden Lacy communicated the results of the investigation and his recommendations to Harrison. Instead of filing a step two grievance disagreeing with the results of the investigation, on August 1, 2008, Harrison filed a Charge of Discrimination with the EEOC in which he alleged that CCA engaged in race discrimination and retaliation.

Sometime after April 2009, Harrison was transferred from the maintenance department to his current position as a detention officer. CCA asserts that this transfer occurred after an annual quality assurance audit resulted in poor results for the maintenance department. According to CCA, all maintenance staff at the time were relieved of their duties and were offered transfers to detention officer positions. Harrison accepted the transfer, and he

2

No. 11-20464

was paid the same salary as he received while working in the maintenance department.

On December 18, 2009, the EEOC issued a Dismissal and Notice of Rights indicating that, based on its investigation, it was unable to conclude that the information it had obtained established a statutory violation. Subsequently, on February 17, 2010, Harrison filed suit against CCA in state court alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act (TCHRA).[1] Eventually the case was removed to federal court. CCA filed a motion for summary judgment to which Harrison did not respond, and the district court granted the motion.

The district court analyzed Harrison's Title VII and TCHRA claims concurrently because the law governing each is identical regarding the issues under consideration.[2] Applying the *McDonnell Douglas* burden-shifting framework, the district court held that Harrison's claims of race discrimination and retaliation could not survive the motion for summary judgment because Harrison failed to establish a prima facie case on either claim. The district court held that, with respect to both claims, Harrison failed to show that he was subject to an adverse employment action, and with respect to the race-discrimination claim, he also failed to allege any facts demonstrating that others similarly situated were treated more favorably. In doing so, the district court noted that summary judgment may not be awarded by default. Instead, the district court emphasized that the movant, CCA, had the burden to demonstrate the absence of a genuine issue of material fact whether any response was filed.

---

[1] 42 U.S.C. §§ 2000e to 2000e-17; TEX. LAB. CODE. ANN. §§ 21.051-.556.

[2] *Harrison v. Corrections Corp. of America*, No. H-10-CV-1291, slip. op. at 3 n.1 (S.D. Tex. Apr. 27, 2011) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 n.10 (5th Cir. 2001)).

No. 11-20464

Harrison filed a motion for new trial, which was denied, and this appeal followed.

## II

As an initial matter, Harrison is mistaken when he argues on appeal that the district court did not resolve his claims under the TCHRA. The district court expressly indicated that it was analyzing his Title VII and TCHRA claims concurrently.[3] The district court's approach was correct because claims under each of these statutes are generally treated the same.[4] We will follow the same approach as the district court.

## III

We review the district court's grant of summary judgment de novo, using the same standards as the district court.[5] Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

The *McDonnell Douglas* burden-shifting framework applies to Harrison's race discrimination and retaliation claims because they are based on circumstantial evidence.[7] Under the first step of the *McDonnell Douglas*

---

[3] *Id.*

[4] *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606-07 (5th Cir. 2007); *Wallace*, 271 F.3d at 219 n.10; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 & n.25 (Tex. 2010); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

[5] *Haggard v. Bank of the Ozarks, Inc.*, 668 F.3d 196, 199 (5th Cir. 2012) (citing *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010)).

[6] FED. R. CIV. P. 56(a).

[7] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001).

framework, the plaintiff must establish a prima facie case.[8]  After the plaintiff establishes a prima facie case, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the [action]."[9]  Finally, if the employer meets that burden, the plaintiff "must . . . be afforded a fair opportunity to show that [the] stated reason for [the action] was in fact pretext."[10]  We conclude that the district court correctly granted summary judgment on Harrison's claims of race discrimination and retaliation because the record does not include evidence that would establish a prima facie case of either claim, and therefore CCA is entitled to judgment as a matter of law.

### A

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[11]  To establish a prima facie case of discrimination under Title VII, a plaintiff must show that he: "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."[12]

---

[8] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).

[9] *See McDonnell Douglas*, 411 U.S. at 802.

[10] *See id.* at 804.

[11] 42 U.S.C. § 2000e-2(a).

[12] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)) (internal quotation marks omitted).

No. 11-20464

With respect to claims of discrimination, in accordance with Title VII's language, our precedent only recognizes ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating as actionable adverse employment actions.[13] A review of the summary-judgment record reveals no evidence that Harrison was subjected to an ultimate employment decision of this sort.[14] There is evidence in the record showing that Harrison was subjected to a racial slur by a CCA employee and that he overheard racial comments in his workplace prior to this incident, but these do not constitute actionable adverse employment actions because they are not the equivalent of the ultimate employment decisions listed above. Consequently, Harrison did not establish a prima facie case of race discrimination.

**B**

Title VII also makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice."[15] "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[16]

---

[13] *See McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007).

[14] The summary-judgment record includes exhibits and Harrison's affidavit, which were filed along with his original petition; his disclosures; and portions of a transcript of Harrison's oral deposition, which was submitted along with other exhibits by CCA in support of its motion for summary judgment. In Harrison's appellate brief, he cites to his deposition and his interrogatory answers, but of these, only the portion of his deposition that was submitted by CCA is in the record.

[15] 42 U.S.C. § 2000e-3(a).

[16] *McCoy*, 492 F.3d at 556-57.

No. 11-20464

Because the language of the anti-discrimination and anti-retaliation provisions differ, an adverse employment action is defined differently for each provision.[17]  With respect to a claim of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[18] Materiality is required in order "to separate significant from trivial harms," and a reasonable-employee standard is used "because . . . the provision's standard for judging harm must be objective."[19]  "[T]he significance of any given act of retaliation will often depend upon the particular circumstances."[20]

Harrison's original petition asserted that two actions constituted unlawful retaliation: he claimed (1) he was reprimanded for actions for which other CCA employees were not reprimanded, and (2) he was transferred from the maintenance department.  We conclude that a reasonable employee would not find either of these actions materially adverse.  Therefore, Harrison did not establish a prima facie case of retaliation.

**1**

While the record indicates that Harrison may have been reprimanded, the reprimands evidenced in the record would not dissuade a reasonable worker from making or supporting a charge of discrimination.  In his deposition, Harrison claimed that he, unlike other employees, was verbally counseled for not reporting every thirty minutes.  He also claimed in his deposition that he

---

[17] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-67 (2006).

[18] *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted).

[19] *Id.*

[20] *Id.* at 69.

received bad evaluations and was reprimanded for misplacing a tool, although he considered his three-day suspension for misplacing the tool to be fair. A reasonable employee would not be dissuaded by a reprimand and punishment he considered to be fair. Furthermore, we conclude that the verbal reprimands and generic bad evaluations in this case, evidenced only by Harrison's brief deposition answers, are nothing more than "trivial harms," which the materiality requirement is intended to separate from significant harms.[21] Because the reprimands evidenced in the record would not dissuade a reasonable worker from making or supporting a charge of discrimination, they do not constitute an adverse employment action as required to establish a prima facie case of retaliation.

**2**

Additionally, the summary-judgment record does not contain evidence sufficient to show that Harrison's transfer constituted an adverse employment action as required to establish a prima facie case of retaliation. Viewed in Harrison's favor, the evidence indicates that: Harrison and two other officers were moved from the maintenance department to detention officer positions; other than being told that Assistant Warden Price wanted to change—or try something new in—the maintenance department, Harrison was not told anything about the reasons for his transfer; and the transfer was lateral, paying the same salary as Harrison received in the maintenance department. There is no record evidence to support Harrison's claims, raised in his appellate brief, that the maintenance department position offered more opportunities for promotion and salary increases, that detention officers were terminated more frequently, or that a reasonable employee would view the detention officer position as less satisfactory and fulfilling.

---

[21] *See id.* at 68.

No. 11-20464

"We have recognized previously that 'a lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances,'" but this depends on the facts of the particular case, which must be judged from the perspective of a reasonable employee.[22]  Without record evidence to show that the detention officer position offered less opportunities for promotion or salary increases, involved a greater likelihood of termination, or the like, Harrison cannot show that a reasonable employee would have found the lateral transfer at the same salary to be materially adverse.[23]   Therefore, Harrison's transfer does not constitute an adverse employment action as required to establish a prima facie case of retaliation.

**3**

On appeal, Harrison also argues that CCA retaliated against him by means of "a flagrant and indecent attempt to lure [him] into a sexual situation, so that, once caught *in flagrante delicto*, he could be fired" and "[t]hreats to the jobs of [himself] and others because of the civil rights complaint."  These arguments were not made to the district court, and they do not appear in Harrison's original petition.  Accordingly, these arguments are waived as we will not consider arguments made for the first time on appeal.[24]

\*       \*       \*

The decision of the district court is AFFIRMED.

---

[22] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008)) (citing *Burlington*, 548 U.S. at 71).

[23] *See id.*; *Aryain*, 534 F.3d at 485; *see also Magiera v. City of Dallas*, 389 F. App'x 433, 438 (5th Cir. 2010) (unpublished); *Barnett v. Boeing Co.*, 306 F. App'x 875, 881 (5th Cir. 2009) (unpublished); *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 396 (5th Cir. 2008) (unpublished).

[24] *E.g.*, *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).