Vicki WARD, Appellant

v.

LAMAR UNIVERSITY and
Texas State University
System, Appellees

NO. 14–14–00097–CV

Court of Appeals of Texas,
Houston (14th Dist.).

Substitute Majority and Dissenting
Opinions filed January 12,
2016

Iain Gordon Simpson, Houston, TX, Larry Watts, Missouri City, TX, for Appellant.

Esteban Soto, Austin, TX, Eric L. Vinson, Austin, TX, for Appellees.

Panel consists of Chief Justice Frost and Justices Christopher and Busby

## SUBSTITUTE MAJORITY OPINION

J. Brett Busby, Justice

We issued majority and dissenting opinions in this case on May 12, 2015. We affirmed the trial court's order of dismissal in part, reversed it in part, and remanded for further proceedings. Appellees subsequently filed a motion for rehearing, and appellant filed a response. These filings narrowed the scope of the issues before us and raised a new issue of mootness that requires further consideration. We therefore grant the motion, withdraw our previous opinions, and issue substitute opinions.

Appellant Vicki Ward sued appellees Lamar University and the Texas State University System for retaliating against her in violation of the Texas Whistleblower Act. Appellees filed a plea to the jurisdiction. Subsequently, Ward filed an amended petition, adding a claim for a declaratory judgment that appellees violated several sections of the Texas Constitution. After a hearing, the trial court issued an order dismissing Ward's claims under the Whistleblower Act based on the plea and dismissing her constitutional claims sua sponte.

In her first issue, Ward argues the trial court erred in dismissing her claims under the Whistleblower Act because her amended petition and testimony sufficed to defeat a plea to the jurisdiction. We hold the trial court erred in dismissing Ward's whistleblower claims against Lamar University because there is evidence that she met the Act's grievance requirement and that Lamar took an adverse personnel action against her. The court properly dismissed Ward's whistleblower claims against the Texas State University System, however, because there is no evidence it took such an action.

In her second issue, Ward asserts the trial court erred by dismissing her free speech retaliation claim against Lamar and the System under the Declaratory Judgments Act and the Texas Constitution because no basis existed for the court's dismissal. As to Lamar, we agree that the trial court erred in dismissing this claim sua sponte. With respect to the System, however, we hold that the claim was properly dismissed on the same ground as the whistleblower claims: lack of evidence of an adverse personnel action. We affirm in part, reverse in part, and remand the case for further proceedings.

## BACKGROUND

Appellant Vicki Ward filed a petition alleging that appellees had violated the Texas Whistleblower Act by taking adverse personnel action against her after she reported in good faith a violation of law to an appropriate law enforcement authority. Tex. Gov't Code Ann. §§ 554.001, *et seq.* Appellees filed a plea to the jurisdiction, seeking dismissal of Ward's claims. Ward then filed an amended petition, adding a second cause of action. Specifically, Ward's amended petition sought a declaratory judgment that appellees had violated Sections 3, 3a, 8, and 19 of Article One of the Texas Constitution.

To support her claims, Ward alleged the following facts in her amended petition. Ward worked as an Associate Vice President for Finance at Lamar University Beaumont. Lamar University is a part of the Texas State University System. Ward was responsible for Lamar's finance operations, including procurement. While reviewing payment requests, Ward noticed suspicious financial transactions within certain departments of Lamar. Ward reported her concerns to Lamar's Police Chief, Jason Goodrich. Over the next several months, an investigation was conducted. The investigation produced a report, co-authored by Ward, that documented the transactions. The report was forwarded to James Simmons, who was at that time President of Lamar.[1] Eventually, the report was leaked to a television station, and the station began running stories concerning the contents of the report.

Ward alleged that after the report was leaked, Simmons "indicated he was interested in hurting [her] as author of the report more than he was interested in correcting the corruption uncovered in the report." Ward lost the ability to approve and review procurement documents. When she asked Simmons about this limitation of her duties, he allegedly replied, "Stop looking at departments and their spending, [sic] you have caused enough trouble." Ward also alleged that she lost authority over her department. Priscilla Parsons was named Senior Associate Vice President of Finance. During a meeting, Simmons allegedly stated that Ward had no authority in the Finance Department.

Ward alleged that she then initiated an appeal to the Chancellor of the System as well as to Simmons and Dr. Cruse Melvin, whom Simmons had appointed as one of her superiors. No formal grievance or appeal policy was identified by any of the parties, either in their pleadings or at the hearing.

Ward subsequently received a phone call from Fernando Gomez, the Vice Chancellor of the System, informing her that her appeal had been received. During the conversation, he allegedly told her "she would have to go." Gomez said Ward would be given a severance package to resign. He told her he was an attorney and could help "settle things" because Ward was not a "good fit." He further told her that she was an employee at will. Ward asked Gomez if he was threatening to fire her. He replied that he was only an attorney and could not fire anyone. He repeated his severance package proposal, and Ward again asked Gomez if he was threatening to fire her. He said "no" but reiterated that Ward was an employee at will. Gomez said, "Remember, I can help you. If not, I will call HR and they will send you a letter." Ward responded that she could not make a decision at that point

---

1. Simmons is no longer President of Lamar, though he remains employed by Lamar as a tenured professor.

and did not understand why she was being threatened because she was merely safeguarding Lamar. Gomez ended the conversation by saying, "Well, I will be sending you a letter and contacting HR." He then hung up. It is undisputed that Ward was not terminated following this conversation and remains employed by Lamar as Associate Vice President for Finance.

During a hearing on appellees' plea to the jurisdiction, Ward testified that her former procurement responsibility had allowed her to identify the malfeasance. She also testified that the number of people under her supervision had been reduced. Ward had overseen between 45 and 50 employees, but after the report was filed, approximately 15 people were removed from her supervision. Furthermore, Parsons ran meetings outside Ward's presence, and Ward now had to report to Parsons, whereas before Ward reported directly to the Vice President for Finance. Ward's job title remained the same, however, and her pay increased from $100,000 to $104,000.

Because the plea to the jurisdiction was filed before Ward's amended petition, it did not address Ward's constitutional claims. At the hearing on the plea, appellees' counsel declared that the court could dismiss the entirety of the complaint on its own motion for failing to allege a constitutional violation but offered to file another plea addressing Ward's constitutional claims if the court desired. The court did not respond to this offer at the hearing, and no motion or plea seeking dismissal of those claims appears in the record. Following the hearing, the trial court issued an order dismissing Ward's claims under

the Texas Constitution sua sponte and granting appellees' plea to the jurisdiction as to Ward's claims under the Texas Whistleblower Act. This appeal followed.[2]

## ANALYSIS

### I. The trial court erred in dismissing Ward's whistleblower claims against Lamar but properly dismissed those claims against the System.

#### A. Standard of review

In her first issue, Ward contends the trial court erred in dismissing her claims under the Texas Whistleblower Act because she presented both allegations and evidence sufficient to defeat appellees' plea to the jurisdiction. If a governmental unit has immunity from suit, a trial court lacks subject-matter jurisdiction over a suit against the unit. *City of Houston v. Ranjel*, 407 S.W.3d 880, 887 (Tex.App.—Houston [14th Dist.] 2013, no pet.). A challenge to a trial court's subject-matter jurisdiction may be asserted by a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). We review a trial court's decision on a plea to the jurisdiction de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

A plaintiff has the burden to allege facts demonstrating jurisdiction, and we construe the pleadings liberally in the plaintiff's favor. *Miranda*, 133 S.W.3d at 226. When the governmental unit challenges the existence of jurisdictional facts, and the parties submit evidence relevant to the jurisdictional challenge, we must consider that evidence when necessary to resolve the jurisdictional issues raised.

**2.** Pursuant to its docket-equalization powers, the Supreme Court of Texas transferred this appeal from the Ninth Court of Appeals to this Court. *See* Tex. Gov't Code Ann. § 73.001 (West 2013). We must decide this

case in accordance with the precedent of the Ninth Court of Appeals under principles of stare decisis if our decision otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3

*Ranjel,* 407 S.W.3d at 887. The court must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda,* 133 S.W.3d at 228. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Id.* at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id.* at 228. This standard generally mirrors that of a summary judgment. *Id.*

### B. Applicable law

Both in the trial court and on appeal, Lamar and the System advance several arguments to support the dismissal of Ward's whistleblower claims.[3] First, they contend that Ward failed to initiate a grievance procedure before filing suit as required by the Whistleblower Act. On appeal, they submit an appeals policy and ask that we take judicial notice of it. Second, they contend Ward's identified personnel actions are not "materially adverse" as a matter of law. Third, they argue Ward's claims against the System fail because Lamar, not the System, was her employer during the relevant time period, and furthermore there is no evidence that the System took any adverse personnel action against Ward.

The Texas Whistleblower Act provides that a "state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a) (West 2012). A "personnel action" is one that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation. *Id.* § 554.001(3).

An adverse personnel action is one that "would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Montgomery County v. Park,* 246 S.W.3d 610, 614 (Tex.2007). The supreme court has explained that this objective materiality standard, which is derived from federal employment law, allows claims based on retaliatory actions "likely to deter" reporting of governmental violations of law while weeding out "petty slights" and "minor annoyances." *Id.* The standard also bars trivial claims resulting from a plaintiff's unusual subjective feelings, while allowing claims arising from the particular circumstances of the challenged action. *Id.* at 614–15. Nonexclusive factors to consider in determining materiality include whether the allegedly adverse personnel action negatively affected the employee's (1) prestige; (2) opportunity for advancement; (3) working conditions; (4) pay or income; or (5) ability to obtain outside employment. *Id.* at 615. The presence or absence of any of these factors is not dispositive. *Id.* The effects of a challenged action must be considered as a whole and in light of all the circumstances, and an act that would be immaterial in some situations is material in others. *Id.*

---

3. Because the plea to the jurisdiction did not challenge other elements of a whistleblower claim, such as Ward's status a public employee who in good faith reported a violation of law, the status of Lamar and the System as governmental entities, or the existence of a causal link between the report of illegal conduct and the identified personnel actions (*see City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 67 (Tex.2000)), we do not address those issues.

The Act waives the employing entity's immunity from an employee's suit alleging a violation of the Act. Tex. Gov't Code Ann. § 554.0035. Before filing suit, however, the Act requires an employee to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action." *Id.* § 554.006(a). The employee must initiate the grievance procedures within 90 days after the alleged violation occurred or was discovered by the employee through reasonable diligence. *Id.* § 554.006(b). This provision affords the governmental entity an opportunity to correct its errors by resolving disputes before facing litigation, as the expense of litigation is borne ultimately by the public. *Fort Bend Indep. Sch. Dist. v. Rivera,* 93 S.W.3d 315, 318 (Tex.App.— Houston [14th Dist.] 2002, no pet.).

■ An employee is not relieved of the requirement to initiate a grievance or appeal by the lack of a formal procedure. *Berry v. Bd. of Regents of Tex. S. Univ.,* 116 S.W.3d 323, 325 (Tex.App.—Houston [14th Dist.] 2003, pet. denied). The Act, however, does not dictate what actions are required to "initiate" the appeals process. *Moore v. Univ. of Houston–Clear Lake,* 165 S.W.3d 97, 102 (Tex.App.— Houston [14th Dist.] 2005, no pet.); *see City of Austin v. Ender,* 30 S.W.3d 590, 594 (Tex. App.—Austin 2000, no pet.). The statute also does not require the use of particular words, nor does it require the employee to state that his grievance or appeal is based on the Whistleblower Act. *Moore,* 165 S.W.3d at 102; *Ender,* 30 S.W.3d at 594.

■ In the absence of a standard created by an employee manual detailing the required contents of a public employee's grievance or appeal, the notice given to an employer must provide fair notice that the employee desires to appeal the employer's personnel decision and fair notice of the decision made by the employer from which the employee desires to appeal. *Montgomery County Hosp. Dist. v. Smith,* 181 S.W.3d 844, 850 (Tex.App.—Beaumont 2005, no pet.). By being given such a notice, the employer will be aware that its employee has appealed from its disciplinary decision and will know which of its employment decisions are being made the subject of its appeal process. *Id.*

**C. There is a fact issue regarding whether Ward initiated a grievance as required by the Act.**

■ To support their contention that Ward failed to initiate the required grievance or appeal procedures before filing suit, Lamar and the System first present a policy that they contend details the steps Ward was required to take in order to initiate a grievance. They argue that we may take judicial notice of the policy on appeal despite their failure to introduce the policy in the trial court in support of their plea to the jurisdiction. By its express terms, however, this alleged policy does not apply to administrative staff members such as Ward. Accordingly, we need not decide whether this inapplicable policy is a proper subject for judicial notice.

Appellees also point to an affidavit— filed with their plea—of Bertha Fregia, Lamar's Vice President for Human Resources, in which she states that Ward never filed a grievance or appeal. Appellees contend this assertion is uncontroverted evidence of the existence of a grievance procedure and Ward's failure to comply. But Ward's amended petition, which was filed after appellees' plea, asserts that she initiated an appeal to the Chancellor of the System, Simmons, and Dr. Cruse Melvin. Furthermore, Ward testified about her appeal and stated that in her appeal letter,

which is not part of the record, she asked the Chancellor to intervene in Simmons' retaliatory acts. She argues that the complaints in her letter and the return phone call from System official Gomez suffice to fulfill the requirement to initiate an appeals process before filing suit.

The record lacks information regarding the relationship between the System and Lamar, so it is unclear whether addressing an appeal to the Chancellor of the System suffices to comply with the requirement that the employee provide notice to the employer. Given that Simmons—the subject of Ward's grievance—was president of Lamar, a letter to the System may have been the best informal avenue available to Ward to initiate a grievance. *See Upton County, Tex. v. Brown,* 960 S.W.2d 808, 813–14 (Tex.App.—El Paso 1997, no pet.) (holding in absence of formal procedure a county employee's phone call to the county commissioner sufficed to fulfill Whistleblower Act's requirement to initiate a grievance procedure before filing suit). In any event, appellees did not offer evidence that the Chancellor is an improper recipient of a grievance or appeal. Considering Ward's testimony regarding the letter to the System Chancellor and the phone call she received from a System official in response, we conclude there is some evidence that appellees had fair notice of Ward's desire to appeal her employer's personnel decision and fair notice of the decision made by the employer from which the employee desires to appeal. *Smith,* 181 S.W.3d at 850.

As noted above, Ward contended that she also directed her appeal to Lamar's then-President Simmons and to Dr. Cruse Melvin, who was operating as her direct superior at Lamar. "To the extent the steps in such a [grievance or appeal] procedure are unclear, as in this case, an employee's request to ranking officials of the employer to invoke the procedure (*i.e.,* whatever it may be) can hardly be denied effect." *Berry,* 116 S.W.3d at 325. For these reasons, we conclude there is a fact issue regarding whether Ward initiated an appeal before filing suit, and therefore the plea cannot be sustained based on Ward's failure to satisfy the Act's grievance requirement.

**D. There is a fact issue regarding whether Lamar took materially adverse personnel action against Ward, but a lack of evidence that the System took such action.**

We next consider appellees' argument that the plea was properly granted because the personnel actions alleged by Ward are not materially adverse as a matter of law. In *City of El Paso v. Parsons,* a firefighter was transferred from his position at the training academy after he reported the fire chief's submission of false reports concerning employee continuing-education requirements. 353 S.W.3d 215, 221 (Tex.App.—El Paso 2011, no pet.). The firefighter lost his responsibility as training chief, and other firefighters were removed from his supervision. *Id.* He retained his job title, however, and received pay increases. *Id.* The court of appeals held the evidence legally sufficient for a jury to conclude the firefighter's transfer constituted an adverse personnel action. *Id.* at 228.

In her amended petition and testimony, Ward alleged that Lamar removed her procurement responsibility, 15 people from her supervision, and her authority over the department. While her pay and job title remained the same, as *Parsons* shows, such factors are not dispositive. *See also Harrison v. Corr. Corp. of Am.,* 476 Fed. Appx. 40, 45 (5th Cir.2012) (collecting Fifth Circuit cases acknowledging that lateral reassignment to a position with equal pay could amount to a materially adverse ac-

tion in some circumstances); *Kessler v. Westchester County Dept. of Soc. Services*, 461 F.3d 199, 202, 210 (2d Cir.2006) (finding. a fact issue where a transfer stripped employee of many of his earlier management responsibilities, even though the employee was never disciplined, suspended, or written up and his salary, benefits, and hours were not decreased). Moreover, she no longer reported directly to the Vice President for Finance; instead, she reported to the new Senior Associate Vice President, an individual with no previous finance experience. Such an action is some evidence that she lost job prestige. *See Gray . v. City of Galveston*, No. 14–12–00183–CV, 2013 WL 2247386, at *9 (Tex. App.—Houston [14th Dist.] May 21, 2013, no pet.) (holding appellant's reassignment from a "command position" to an "investigative position," where he reported to an officer with a lower rank and no longer served as a "direct report" to the Chief of Police, supported a conclusion that appellant was transferred to a less prestigious position).

Moreover, Ward testified that she lost her procurement duties, which were the duties that had allowed her to discover the transactions she reported. Removing the very authority that allowed a whistleblower to find wrongdoing in the first place is some evidence of an action that would likely dissuade a reasonable, similarly situated worker from making a report under the Act. *See Park*, 246 S.W.3d at 614–15. Under the circumstances, taking all of Ward's allegations as true, we hold the pleadings and testimony were sufficient to raise a fact question as to whether she suffered adverse employment actions at the hands of . Lamar. *Miranda*, 133 S.W.3d at 227–28. The trial court thus

erred in dismissing Ward's whistleblower claims against Lamar.

▮▮▮▮ With respect to the System, however, the only adverse employment actions Ward alleges are the implied threats of termination she received during the phone call with Gomez. Ward was never terminated, however. Unfulfilled threats to fire do not constitute actionable adverse employment decisions. *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 142–43 (Tex.App.—Fort Worth 2000, pet. denied); *see also Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) ("An unfulfilled threat, which results in no material harm, is not materially adverse.").[4] Accordingly, we hold the trial court properly dismissed Ward's whistleblower claim against the System. We therefore sustain Ward's first issue in part and overrule it in part.

## II. The trial court erred in dismissing sua sponte Ward's free speech retaliation claim against Lamar, but it properly dismissed that claim against the System.

In her second issue, Ward contends the trial court erred in dismissing sua sponte her free speech retaliation claim under the Declaratory Judgments Act and the Texas Constitution because no ground existed for dismissal. As noted above, Ward amended her petition after Lamar and the System filed their plea to the jurisdiction. Ward's amended petition added allegations that, among other things, both Lamar and the System retaliated against her for exercising her right to free speech under the Texas Constitution. Invoking the Declaratory Judgments Act, Ward sought a declaration that appellees violated Article I, Section 8 of the Texas Constitution, as well

---

**4.** Because Ward failed to allege an adverse employment action committed by the System, we need not consider appellees' argument that the Texas Whistleblower Act does not apply to the System because it was not the employing entity.

as an injunction requiring appellees to restore her former job duties and refrain from violating her constitutional rights and retaliating against her. Ward also alleged that appellees violated Article I, Sections 3, 3a, and 19 of the Texas Constitution, which guarantee equal rights, equality based on sex, and due course of law.

The Texas Constitution's Bill of Rights includes the following provision:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

Tex. Const. art. I, § 8. Because this provision expressly guarantees an affirmative right to speak, the supreme court has held that it provides greater rights than the First Amendment to the Constitution of the United States in the context of prior restraints on speech, though it has not extended that holding to other contexts. *Compare Davenport v. Garcia*, 834 S.W.2d 4, 8–9 (Tex.1992), *with Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex.2003), *and Commission for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434 (Tex.1998).

The trial court dismissed Ward's claims under the Declaratory Judgments Act and the Texas Constitution "[o]n its own motion," stating that Ward's petition "fail[s] to articulate facts which, if believed, would support such a claim." Ward argues that no legal grounds existed for the dismissal.

We agree as to her free speech retaliation claim against Lamar but disagree as to her free speech retaliation claim against the System. On rehearing, Ward disavows any intention to seek reversal of the trial court's order dismissing her other constitutional claims. Accordingly, we do not address those claims.

## A. Ward's free speech retaliation claim is not moot.

■ Lamar and the System argue for the first time on rehearing that Ward's free speech retaliation claim under the Declaratory Judgments Act and the Texas Constitution became moot because she resigned her position at Lamar after the trial court's dismissal but before any party filed a brief in this case. None of the parties mentioned a resignation in their briefs, and no resignation is included in our record. Appellees attached a copy of a resignation letter to their motion for rehearing.

Although issues implicating our jurisdiction generally may not be waived by failing to raise them promptly, we take this opportunity to emphasize that such issues should always be brought to the court's attention at the earliest possible time. Any other practice would waste party and court resources and would create opportunities for unfairness and manipulation. No party should feel free to gamble on winning a favorable ruling on the merits while concealing a jurisdictional flaw or holding a jurisdictional trump card to play in the event of a loss. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.01–3.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West Supp.2015) (Tex. State Bar R. art. X, § 9).

■ Ward argues that we may not consider the resignation letter because it is not in our record. But appellate courts have a duty to assess their own jurisdiction sua sponte, *M.O. Dental Lab v. Rape*, 139

S.W.3d 671, 673 (Tex.2004), and we may ascertain facts necessary to the exercise of our jurisdiction. Tex. Gov't Code § 22.220(c) (West Supp.2015) ("Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction."). Texas Rule of Appellate Procedure 10.2 provides the mechanism for ascertaining jurisdictional facts when—as here—they are not in the record and not within the court's knowledge in its official capacity. Under that rule, the attorney signing the motion may state the fact if it is within his personal knowledge; otherwise, the motion "must be supported by affidavit or other satisfactory evidence." Tex. R.App. P. 10.2. Here, there is no indication that the attorney who filed appellees' motion for rehearing (as well as appellees' brief) had personal knowledge of Ward's resignation, and appellees' motion for rehearing includes no affidavit substantiating Ward's resignation or authenticating the letter.[5]

We need not decide whether appellees' failure to comply with Rule 10.2 dooms their mootness argument, however, because that argument fails even if the resignation letter is considered. Appellees argue that Ward's resignation moots her free speech retaliation claim seeking declaratory and injunctive relief because Ward's requested injunctive relief is no longer available. *See Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d 321, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The mootness doctrine precludes a court from rendering an advisory opinion in a case where there is no live controversy."). Ward counters that her declaratory claim is not moot because she sought attorney's fees, and a party need not prevail to recover attorney's fees under the Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2015) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

We agree that Ward's claim is not moot because she sought attorney's fees under the Declaratory Judgments Act. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex.2005) (citing *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)); *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 773–75 (Tex. App.—Dallas 2011, no pet.) ("[A] case under the Declaratory Judgments Act remains a live controversy, even if all requests for substantive declaratory relief become moot during the action's pendency, as long as a claim for attorneys' fees under the Act remains pending."); *Labrado v. County of El Paso*, 132 S.W.3d 581, 589–591 (Tex.App.—El Paso 2004, no pet.); *cf. Devon Energy Prod. Co. v. KCS Resources, LLC*, 450 S.W.3d 203, 218–223 (Tex.App.—Houston [14th Dist.] 2014, pet. denied) (holding a party could seek fees where trial court lacked jurisdiction over opposing party's declaratory claim from its inception).

In *Hallman*, the supreme court held that a declaratory judgment suit regarding an insurer's duty to defend did not become moot on appeal when the insurer provided the requested defense because there was still a live dispute over the insured's entitlement to attorney's fees under the Declaratory Judgments Act. 159 S.W.3d at 642–43. The trial court had ruled that the insurer had no duty to defend, and the

---

**5.** Our dissenting colleague contends that we should consider the letter because Ward admits its authenticity in her response to appellees' motion for rehearing. But Ward's response states in part that the letter "purports to be Ward's resignation." Considering Ward's response as a whole, we disagree that it includes an unequivocal admission that the letter is authentic.

supreme court explained that a different answer on that merits question would require a remand for the trial court to reconsider whether an award of fees to the insured was appropriate. *Id.* at 643. Similarly, the trial court dismissed Ward's free speech retaliation claim in this case, and Ward apparently resigned thereafter. If Ward is correct that this dismissal was erroneous, then further proceedings may show that an award of attorney's fees is appropriate under the Declaratory Judgments Act.[6] Accordingly, as in *Hallman,* we address the merits of the free speech retaliation dispute. *See id.*[7]

## B. Appellees offered no viable ground for dismissing Ward's free speech retaliation claim against Lamar.

**6.** Our dissenting colleague contends that we should be very specific regarding the nature of the proceedings to be conducted on remand, and she argues that those proceedings should have a particular scope. *Post,* at 457–58. But the parties have neither addressed this issue nor made any such arguments. Thus, for the same reasons discussed in Part II.B. below, we leave this issue for the trial court to resolve in the first instance in light of the parties' adversary presentation and testing and proper introduction of any relevant evidence.

**7.** Our dissenting colleague contends that *Hallman* is not on point because Ward is not appealing the denial of a motion for summary judgment seeking attorneys' fees, and she cites our sister court's decision in *Tesco Corporation v. Steadfast Insurance Company,* No. 01–13–91–CV, — S.W.3d —, 2015 WL 456466 (Tex.App.—Houston [1st Dist.] Feb. 3, 2015, pet. filed). We disagree that this factual difference provides a basis for distinguishing *Hallman* or any of the other cases cited above. In *Tesco,* the parties filed motions for summary judgment, but Tesco's motion was only partial and did not address the attorneys' fees it had requested in its petition. *Id.* at —, 2015 WL 456466 at *1. After the trial court granted its opponent's motion for summary judgment, Tesco did not attack the denial of attorney's fees in its appellate brief. *Id.*

■ Although the trial court stated the ground for its ruling dismissing Ward's free speech retaliation claim, we may consider in the interest of judicial economy other grounds for dismissal that were preserved for review.[8] As discussed in Part I of this opinion, one of the grounds for dismissal raised in appellees' plea was that Ward did not suffer an adverse employment action. Thus, we consider whether this ground could also provide a basis for dismissing Ward's free speech retaliation claim. *See City of Dallas v. Turley,* 316 S.W.3d 762, 774 (Tex.App.—Dallas 2010, pet. denied) (analyzing whether grounds raised in plea to jurisdiction supported dismissal of claims added in amended petition filed after plea).

at —, 2015 WL 456466 at *4. For these reasons, the First Court held there was no live issue regarding attorney's fees. *Id.* In contrast, Ward had no opportunity to file a motion for summary judgment in this case because the trial court dismissed her free speech retaliation claim seeking declaratory and injunctive relief sua sponte on the pleadings. Ward's brief devotes an issue and an entire section of argument to attacking the dismissal of this claim, and we see no reason why this global challenge should not include a challenge to the dismissal of her request for attorney's fees based on this claim. *See* Tex. R. App. P. 38.1(f); *Perry v. Cohen,* 272 S.W.3d 585, 587 (Tex.2008).

**8.** *Cf. Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996) (holding in summary judgment context that appellate court "may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy"); *City of Mont Belvieu v. Enter. Products Operating, LP,* 222 S.W.3d 515, 519 (Tex.App.—Houston [14th Dist.] 2007, no pet.) (limiting appellate review of order sustaining plea to jurisdiction to matters presented to trial court); *Britton v. Tex. Dep't of Crim. Justice,* 95 S.W.3d 676, 681 (Tex.App.—Houston [1st Dist.] 2002, no pet.) (looking to summary judgment practice for guidance in reviewing pleas to jurisdiction based on multiple grounds).

. In their briefs on appeal, both parties look to federal decisions addressing the elements of a First Amendment retaliation claim for guidance on the elements of Ward's free speech retaliation claim under the Texas Constitution. One of those federal elements is an adverse employment decision. *See, e.g., Juarez v. Aguilar,* 666 F.3d 325, 332 (5th Cir.2011). Because the parties have not argued that the elements of the claim differ under the Texas Constitution, we will analyze Ward's claim using the federal requirement of an adverse employment decision. *See Price v. Tex. Alcoholic Beverage Comm'n,* No. 01–12–1164–CV, 2014 WL 3408696, at \*5 (Tex.App.—Houston [1st Dist.] July 10, 2014, pet. denied) (mem.op.).

As we explained in Part I, the pleadings and testimony are sufficient to raise a fact question regarding whether Ward suffered an adverse employment decision at the hands of Lamar, but Ward has not alleged any actionable adverse employment decision by the System. Accordingly, we affirm the trial court's dismissal of Ward's free speech retaliation claim against the System under the Declaratory Judgments Act and Article I, Section 8 of the Texas Constitution.

■ Because appellees' plea to the jurisdiction does not support dismissal of Ward's first amendment retaliation claim against Lamar, we next examine the trial court's stated non-jurisdictional reason for dismissing that claim. The trial court's order specifies that the dismissal of Ward's constitutional claims was for failure to plead facts supporting the claims.[9] But there was no motion or other procedural vehicle available to the trial court authorizing it to dismiss these claims, and neither the trial court nor appellees identify any authority for dismissing a claim sua sponte on this basis. *Cf.* Tex.R.App. P. 91a.1 (requiring motion to dismiss cause of action on the grounds that it has no basis in law or fact).

■ In the absence of such authority, courts should rely on the adversary system of justice, which depends on the parties to frame the issues for decision and assigns to courts the role of neutral arbiter of the matters that the parties present. *Greenlaw v. United States,* 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008).[10] One rationale for this system is that the parties and their counsel usually know far better than the courts what is best for them, so they are responsible for advancing the facts and arguments entitling them

---

9. Specifically, the trial court stated that the "claims under the Texas Constitution contained in the Amended Petition fail to articulate facts which, if believed, would support such a claim." In other words, the trial court concluded that Ward's petition failed to state a claim, which is not the same as a failure of jurisdiction. *E.g., Dubai Petrol. Co. v. Kazi,* 12 S.W.3d 71, 75–77 (Tex.2000). The trial court did not say that the petition failed to allege facts demonstrating the court's subject-matter jurisdiction, nor did it say why any such failure could not be remedied by affording Ward an opportunity to amend. *Cf. Miranda,* 133 S.W.3d at 226–27.

10. *See also United States v. Burke,* 504 U.S. 229, 246, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring in the judgment) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system from the inquisitorial one"); *McNeil v. Wisconsin,* 501 U.S. 171, 181 n. 2, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) ("What makes a system [of justice] adversarial rather than inquisitorial is ... the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties.").

to relief. *Id.* at 244, 128 S.Ct. 2559.[11] Resolving disputes only on grounds raised by the parties also serves judicial economy,[12] keeps courts within their constitutionally assigned role as impartial and "neutral arbiter[s]," *id.* at 243, 128 S.Ct. 2559,[13] and enables courts to make well-informed decisions based on full adversary presentation and testing of the arguments on either side of the issue at hand.

The parties have not addressed—either in the trial court or on appeal—whether Texas courts recognize a claim under the Texas Constitution to enjoin an adverse employment action taken in retaliation for the exercise of free speech rights, nor have they addressed whether appellees are immune from suit on such a claim.[14] The trial court should have allowed the parties to develop these issues through the adversary process; it erred by dismissing Ward's free speech retaliation claim against Lamar without a legal basis for doing so. We sustain Ward's second issue in part and reverse the trial court's dismissal of her free speech retaliation claim against Lamar under the Declaratory Judgments Act and Article I, Section 8 of the Texas Constitution.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Ward's whistleblower claims and her free speech retal-

---

**11.** *See also Castro v. United States,* 540 U.S. 375, 386, 124 S.Ct. 786, 157 L.Ed.2d 778 (Scalia, J., concurring in part and concurring in judgment); *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) ("In our adversary system, it is enough for judges to judge. The determination of what may be useful to [a party] can properly and effectively be made only by an advocate").

**12.** *See Martinez v. State,* 91 S.W.3d 331, 336 n. 12 (Tex.Crim.App.2002).

**13.** *See also Greenlaw,* 554 U.S. at 244, 128 S.Ct. 2559 (" '[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for the cases to come to us, and when they do we normally decide only questions presented by the parties.' " (quoting *United States v. Samuels,* 808 F.2d 1298, 1301 (8th Cir.1987) (R. Arnold, J., concurring in denial of reh'g en banc)); *Smith v. Horn,* 120 F.3d 400, 409 (3d Cir.1997) (explaining that when courts decide cases on grounds they raise sua sponte, they "come dangerously close to acting as advocates for [a party] rather than as impartial magistrates"). The Due Process Clause of the Federal Constitution and the Due Course of Law Clause of the Texas Constitution require judges to be neutral and detached. U.S. Const. amend. V; Tex. Const. art. I, § 19; Tex. Const. art. I, § 13; *see Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 617–18, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); *Earley v. State,* 855 S.W.2d 260, 262 (Tex.App.—Corpus Christi 1993, no pet.).

**14.** We are aware that courts have allowed public employees to sue their employers for damages under 42 U.S.C. § 1983 when the employees suffer adverse employment consequences for exercising their First Amendment right to speak on matters of public concern. *E.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Baker v. Gregg County,* 33 S.W.3d 72, 79 (Tex.App.—Texarkana 2000, pet. dism'd). But Ward has not sued under section 1983, Texas has no comparable state statute, and there is no implied private right of action for damages arising under the free speech provision of the Texas Constitution. *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 147 (Tex.1995). The trial court and the parties have not addressed whether injunctive relief is available in this circumstance to remedy violations of the Texas Constitution, *cf. City of Elsa v. M.A.L.,* 226 S.W.3d 390, 392 (Tex.2007) (per curiam), or whether appellees' sovereign immunity is waived in this circumstance under the Declaratory Judgments Act. *Cf. City of El Paso v. Heinrich,* 284 S.W.3d 366, 372–73 (Tex.2009) ("[Under the Declaratory Judgments Act], the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit."). We therefore do not decide those questions here.

iation claim against the Texas State University System, reverse the trial court's dismissal of Ward's whistleblower claims and her free speech retaliation claim against Lamar University, and remand the case to the trial court for further proceedings consistent with this opinion.

(Frost, C.J., dissenting).

## SUBSTITUTE DISSENTING OPINION

Kem Thompson Frost, Chief Justice

I respectfully dissent.

Appellant Vicki Ward filed various claims relating to her alleged employment at both appellee Lamar University and appellee Texas State University System (collectively the "Lamar Parties"). Shortly after perfecting this appeal, Ward resigned her employment. This resignation renders moot Ward's claims for injunctive and declaratory relief against the Lamar Parties based on alleged workplace retaliation against Ward for exercising her free-speech rights. Therefore, this court should vacate the trial court's judgment and dismiss this appeal as to these free-speech retaliation claims rather than addressing the merits of Ward's appeal as to these claims.

**Ward's resignation moots her claims for declaratory and injunctive relief regarding alleged retaliation against her for exercising her free-speech rights.**

In her live pleading in the trial court, Ward alleged both Lamar Parties employed her. Ward asserted various claims against the Lamar Parties, including claims under the Texas Whistleblower Act, and claims for declaratory and injunctive relief based on alleged adverse personnel actions by the Lamar Parties against Ward in retaliation for exercising her free-speech rights under the Texas Constitution.[1]

Less than two months after Ward perfected this appeal from the trial court's order dismissing all of her claims against the Lamar Parties, Ward resigned her employment. Nonetheless, neither Ward nor the Lamar Parties notified this court of Ward's resignation until seventeen months later, when the Lamar Parties moved for rehearing, after the parties had filed their appellate briefs and this court had issued its opinion on original submission. The Lamar Parties attached to their rehearing motion a copy of Ward's resignation letter. In response, Ward admits that this document is her letter of resignation. Yet, Ward asserts that this letter cannot serve as the basis of this court's decision because the resignation letter was not presented to the trial court and is not part of the clerk's record or reporter's record in this appeal. Ward's complaints lack merit because this court may consider matters not submitted to the trial court and not contained in the clerk's record or reporter's record for the purpose of determining whether this court has lost jurisdiction because an issue has become moot.[2] Though it would have been better for the Lamar Parties to have submitted an affidavit or other evidence

1. *See* Tex. Gov't Code Ann. § 554.001, *et seq.* (West 2012); Tex. Const. art. I, § 8 (West, Westlaw through 2015 R.S.) (providing that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press").

2. Tex. Gov't Code § 22.220(c) (West Supp. 2015) ("Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction."); *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex.2000); *In re C.M.D.*, 287 S.W.3d 510, 513–14 (Tex.App.—Houston [14th Dist.] 2009, no pet.).

establishing Ward's resignation, Ward has admitted that this document is her resignation letter, and based on this admission, this court may conclude that Ward has resigned and is no longer employed by the Lamar Parties.

Because Ward has resigned her employment, there is no longer any threat that Ward will suffer adverse personnel actions in retaliation for her exercise of her free-speech rights under the Texas Constitution. Unlike the remedies Ward seeks for her claims under the Texas Whistleblower Act, which contains a waiver of governmental immunity, Ward does not seek money damages based on the alleged adverse personnel actions in retaliation for Ward's exercising her free-speech rights. Rather, Ward seeks only declaratory and injunctive relief. Ward asserts that these claims are not moot because Ward sought attorney's fees under the Declaratory Judgments Act and this request for fees "breathes life" into her claims for declaratory and injunctive relief under *Allstate Insurance Company v. Hallman.*[3]

In *Hallman,* an insured and her insurer filed claims against each other seeking declaratory relief on the issue of whether the insurer had a duty to defend and indemnify the insured.[4] Both parties sought attorney's fees under the Declaratory Judgments Act.[5] On cross-motions for summary judgment, the trial court granted the insurer's motion, denied the insured's motion, denied each party's attorney's-fee request, and rendered a final judgment.[6] On appeal, the insured challenged the trial court's denial of her attorney's-fee request, and the court of appeals reversed the summary judgment, concluding that the trial court should have granted the insured's motion regarding the coverage issue and that the case should be remanded for the trial court to determine whether to grant the insured's request for attorney's fees.[7] While the case was pending in the Supreme Court of Texas, the coverage issues that were the subject of the declaratory relief became moot.[8] Nonetheless, the high court concluded that the appeal had not become moot because there remained a live controversy as to whether the insurer should be ordered to pay the insured's attorney's fees and because the high court needed to resolve the coverage issue to determine whether the case should be remanded to the trial court for reconsideration of the fee request, as the insured requested on appeal and as the court of appeals ordered.[9]

In Ward's case, the trial court did not rule on summary-judgment motions; instead, it granted the Lamar Parties' jurisdictional plea and dismissed all of Ward's claims. Ward first pleaded her claims for declaratory and injunctive relief two days before the trial court conducted a hearing on the Lamar Parties' plea to the jurisdiction and two days before the trial court rendered a final order dismissing all of Ward's claims. Within three months, Ward had resigned her employment, before any of the appellate briefs were filed in this case. Unlike the *Hallman* scenario, when Ward filed her appellate brief, she did not challenge the trial court's dismissal of her request for attorney's fees under the Declaratory Judgments Act. On this record, *Hallman* is not on point and

3. *See* 159 S.W.3d 640, 642–43 (Tex.2005).

4. *See id.* at 641.

5. *See id.*

6. *See id.* at 642.

7. *See id.*

8. *See id.*

9. *See id.* at 642–43.

Ward's request in the trial court for attorney's fees under the Declaratory Judgments Act does not preclude her claims for declaratory and injunctive relief regarding her free-speech rights from becoming moot.[10] Thus, Ward's claims against the Lamar Parties for declaratory and injunctive relief based on alleged free-speech retaliation have become moot.[11]

**The majority should not equate a failure to prove Ward's resignation with a potential remand under the *Hallman* case.**

The majority concludes that it need not decide whether the Lamar Parties have proved that Ward resigned her employment because any resignation by Ward would not moot the claims in question under the *Hallman* case.[12] Even if the *Hallman* case did apply, this court still would have to determine whether Ward resigned her employment because the scope of remand would be different as to Ward's claims against Lamar University. If Ward has not resigned or if the Lamar Parties have not sufficiently established this resignation, then, under the majority's analysis, this court should be reversing the trial court's order as to the claims against Lamar University for declaratory and in-

junctive relief based on alleged free-speech retaliation and remanding generally for further proceedings because neither the requests for declaratory and injunctive relief nor the related attorney's fee request would be moot.[13] On the other hand, if this court determines that Ward has resigned, even if *Hallman* applies, the only issue to be determined on remand would be whether the trial court would like to exercise its discretion to award attorney's fees under the Declaratory Judgments Act in light of the new circumstance that its dismissal of those claims has been determined on appeal to have been erroneous.[14] Therefore, this court should decide whether Ward has resigned her employment.[15]

According to the majority, Ward has not admitted that the document attached to the rehearing motion is her resignation letter.[16] Because the Lamar Parties have not proved up the resignation letter or otherwise submitted evidence of Ward's resignation, without such an admission, this court would have no basis to conclude that Ward resigned her employment.[17] In that event, under the majority's analysis, this court would be reversing the trial

---

10. *See Tesco Corp. v. Steadfast Ins. Co.,* No. 01–13–00091–CV, ─── S.W.3d ───, ───–───, 2015 WL 456466, at *3–4 (Tex.App.─Houston [1st Dist.] Feb. 3, 2015, pet. filed) (mem. op.).

11. *See id.*

12. *See ante* at 451–52.

13. As to the claims against the Texas State University System for declaratory and injunctive relief based on alleged adverse personnel actions in retaliation for Ward's exercise of her free-speech rights, the majority affirms the trial court's dismissal order.

14. *See Hallman,* 159 S.W.3d at 642–43; *AVE, Inc. v. Comal County,* No. 03–05–00183–CV, 2008 WL 2065857, at *3–4 (Tex.App.─Austin May 14, 2008, no pet.) (holding that issues as

to whether declaratory relief should be granted had become moot and would be dismissed for lack of jurisdiction, but that, under Hallman, the entire appeal was not moot because there still was a live controversy as to whether appellee was entitled to recover attorney's fees under the Declaratory Judgments Act and therefore issues regarding attorney's fees were not moot and would be decided) (mem. op.).

15. *See Hallman,* 159 S.W.3d at 642–43; *AVE, Inc.,* 2008 WL 2065857, at *3–4.

16. *See ante* at 451, n. 5.

17. *See id.* Given the jurisdictional nature of the mootness inquiry, the Lamar Parties still would be free to submit additional proof that Ward has resigned her employment in a subsequent filing in this appeal.

court's order as to the claims against Lamar University for declaratory and injunctive relief based on alleged free-speech retaliation and remanding generally for further proceedings on the merits because neither the requests for declaratory and injunctive relief nor the related attorney's-fee request would be moot.[18] According to the majority, even though Ward has not admitted that the document is her resignation letter, this court need not address whether the Lamar Parties have proved that Ward resigned because the outcome of the mootness inquiry is the same whether or not Ward is employed by the Lamar Parties.[19] Because the answer to the mootness inquiry differs depending on Ward's employment status, and because the majority concludes Ward has not admitted that the document is her resignation letter, this court must determine whether the Lamar Parties have proved that Ward has resigned her employment.[20]

**The majority should clarify what proceedings the trial court should conduct on remand regarding the free-speech-retaliation claims against Lamar University.**

The majority reverses the trial court's dismissal order as to the claims against Lamar University for declaratory and injunctive relief based on alleged free-speech retaliation and remands for further proceedings consistent with the majority opinion. The majority concludes that, under *Hallman*, "Ward's claim is not moot because she sought attorney's fees under the Declaratory Judgments Act" and because, if the trial court erred in dismissing

Ward's free-speech retaliation claim, "then further proceedings may show that an award of attorney's fees is appropriate under the Declaratory Judgments Act."[21] But, even under *Hallman*, the only further proceedings regarding this claim against Lamar University that are not moot is a remand for the trial court to determine whether to exercise its discretion to award attorney's fees under the Declaratory Judgments Act in light of the new circumstance that this court has determined trial court erred in dismissing this claim.[22] Rather than recognize the limited nature of this remand, the majority holds that Ward's free-speech retaliation claim is not moot and generally remands for further proceedings on this claim against Lamar University. The majority thus incorrectly concludes that, under *Hallman*, because Ward requested attorney's fees under the Texas Declaratory Judgments Act, there remains a live controversy as to Ward's entitlement on remand to declaratory and injunctive relief against Lamar University based on alleged free-speech retaliation.[23]

In deciding cases, the appellate court has an obligation to the trial court and to the litigants to state clearly the action taken. When remanding for the trial court to undertake further consideration of the case, the appellate court should set forth what is expected. Yet, the majority takes the unusual posture that it need not specify what proceedings on remand would be consistent with the majority opinion. The reason the majority gives for not doing so is that the parties did not brief the

18. *See Hallman*, 159 S.W.3d at 642–43; *AVE, Inc.*, 2008 WL 2065857, at *3–4.

19. *See ante* at 451–52.

20. *See ante* at 451–52; *Hallman*, 159 S.W.3d at 642–43; *AVE, Inc.*, 2008 WL 2065857, at *3–4.

21. *Ante* at 451–52;

22. *See Hallman*, 159 S.W.3d at 642–43; *AVE, Inc.*, 2008 WL 2065857, at *3–4.

23. *See AVE, Inc.*, 2008 WL 2065857, at *3–4.

issue.[24]  This court's duty to render the correct judgment does not turn on the parties' briefing.[25]  But, even if it did, the parties briefed the mootness issue, and answering this question is necessary to determine the mootness issue.[26]

Because the majority does not address what further proceedings the trial court should conduct, it may not be clear to the trial court whether this court has concluded that a live controversy remains as to whether, on remand, Ward is entitled to declaratory and injunctive relief against Lamar University based on alleged free-speech retaliation.  The parties and the trial court might have questions about what is expected based on today's decision:

- May the trial court allow discovery on Ward's moot requests for declaratory and injunctive relief because the merits of these claims need to be determined so that the trial court may decide whether an award of attorney's fees under the Declaratory Judgments Act is appropriate?
- May the trial court consider any summary-judgment motions filed regarding these moot requests?
- May the trial court conduct a trial on any fact issues regarding these moot requests so that the court may determine whether an award of attorney's fees under the Declaratory Judgments Act is appropriate?

The majority's failure to address these matters leaves uncertainty as to how this court has resolved the mootness issue. The need for clarity and precision on this point comes into sharper focus when considering the potential costs and delays the lack of it might spawn.  Speaking clearly now might curtail litigation expenses, conserve judicial resources, and enhance efficiency.

---

24.  *See ante* at 451–52, n. 6.

25.  *See Garza v. Cantu*, 431 S.W.3d 96, 108–10 (Tex.App.—Houston [14th Dist.] 2013, pet. denied) (remanding case to the trial court for a new trial because that was the proper appellate disposition based on the appellant's meritorious issue, even though appellant did not brief or request a remand for a new trial).

26.  *See AVE, Inc.*, 2008 WL 2065857, at *3–4.