**Opinion filed December 12, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00186-CV

_____

## IN THE INTEREST OF C.S. JR. AND Z.S., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11002-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of C.S. Jr. and Z.S.[1]  Only the mother has appealed.[2]  In three issue on appeal, Appellant challenges the sufficiency of the evidence to support the trial court's findings that she committed the alleged acts as grounds for termination of her parental rights, and that termination of her parental

---

[1]We use initials to refer to the children and their family members.  *See* TEX. R. APP. P. 9.8(b).

[2]The children's father began serving a seven-year prison sentence in October 2022, and has been incarcerated throughout the duration of this case.

rights is in the children's best interest. In two additional issues, Appellant contests the trial court's jurisdiction to issue its termination order, arguing that this case was automatically dismissed prior to the trial court's rulings. We affirm the trial court's order of termination.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2024). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the children's removal under Chapter 262 because of Appellant's abuse or neglect of the children. *See id.* § 161.001(b)(1)(D), (E), (O). The trial court further found,

2

pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2).

In her third, fourth, and fifth issues on appeal, Appellant challenges the trial court's findings under subsections (D), (E), and (O), and its best-interest finding as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

3

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best

interest analysis evaluates the best interest of the children, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the children's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *Factual and Procedural Background*

The Department intervened after Appellant committed the offense of aggravated assault with a deadly weapon in the presence of her children, C.S. Jr. and Z.S., who were four and two years old at the time. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2024). On February 2, 2023, Appellant and her children accompanied Appellant's boyfriend, D'Martja Wellons, to pick up his toddler-age son from his ex-girlfriend, Evelyn Henry. As Henry was getting her son out of the car, Appellant "storm[ed] at [Henry]," and "[they] just started fighting." After they were separated, Appellant "ran to [Wellons]'s car and pulled out a gun on [Henry]." While pointing the gun at Henry, Appellant told her to "back up," and "was saying she was going to shoot [her]." Henry "didn't know what [Appellant] was capable"

5

of, and feared for her son, who was still outside with her. Appellant was charged with aggravated assault with a deadly weapon, and her criminal case was still pending at the time of the final hearing.

Megan Rucker, a Department family-based safety services worker, visited Appellant's apartment on February 22 and smelled the "[p]ungent . . . strong and very, very noticeable" odor of marihuana. Rucker smelled the odor of marihuana again when she returned the following day. Initially, Appellant denied marihuana use but later "admitted to using mari[h]uana in the prior months," including "right around Christmas 2022."

On February 28, the Department requested hair follicle samples for drug testing from Appellant, Wellons, and the children. Everyone, including the children, tested positive for marihuana. When Rucker confronted Appellant with the children's positive drug test results, Appellant displayed "[a] disregard for the concern," said she "[didn't] f-----g have time for this," and that the children "were basically negative." The Department sought and was granted temporary managing conservatorship of C.S. Jr. and Z.S. on March 6, 2023. The children were placed with their paternal grandmother, A.H., and remained there until the final hearing.

On March 26, 2023, the trial court advised "all attorneys and *pro se* litigants" in its scheduling order that the final hearing was set for February 12, 2024, and—in bold, capitalized letters—that the dismissal date was March 11, 2024. *See* FAM. § 263.401(a).

In April 2023, the Department created a family plan of service for Appellant, which required "[a]nyone in a relationship with [Appellant] or liv[ing] in the home . . . and anticipates a relationship with [C.S. Jr.] and [Z.S.] shall participate in services." It further prohibited Appellant from "associat[ing] with those that are engaged in illegal activity or the use of illegal substances." Appellant denied communicating with Wellons or "[being] in his presence," even "when they tested

6

positive relatively around the same time frame for cocaine." Although Appellant completed most of her service plan requirements before the December 5 permanency hearing, she submitted to urinalysis drug testing on November 28 that was positive for marihuana. The trial court's order that was issued after the permanency hearing, which was signed by Appellant's trial counsel, reiterated the March 11, 2024 dismissal date in conspicuous bold and underlined letters.

Appellant's hair follicle drug test was submitted on January 18, 2024, which yielded positive results for marihuana and cocaine. Wellons tested positive for marihuana on February 7 and 14, 2024, and tested positive for cocaine on February 16. The Department also learned that Appellant and Wellons continued their relationship while the case was pending, but Appellant nevertheless denied having contact.

During a pretrial hearing on January 26, 2024, Appellant's trial counsel "advocate[d] for an extension" of the automatic dismissal date because Appellant has "really been working the service plan, and . . . is testing negative." Additionally, trial counsel's vacation plans conflicted with the February 12 trial setting. The trial court set another pretrial hearing for February 23, 2024, and the reset the final hearing for March 4.

The Department and the attorney ad litem appeared at the February 23 pretrial hearing. Appellant's trial counsel "fully intended to appear" after a scheduled non-emergency procedure, but "realized that [she] was not able to make it" shortly before the hearing commenced. The Department communicated with Appellant's trial counsel throughout the hearing in order to accommodate her schedule, and the parties ultimately determined that the presentation of evidence would take at least "a half day." The trial court noted, again, that the automatic dismissal date was

7

March 11, 2024, but based on the volume of cases on its docket and the limitations for securing a court reporter,[3] the trial court stated:

> I don't have anywhere to put a half day that works with everyone's schedules before March the 11th, so I think I have to grant an extension and we can pick a date . . . during trial week in April.

Appellant's trial counsel informed the Department via text message that she was available "any day except Monday [April 8]." Again, recognizing that it "[had] to grant an extension," the trial court set the final hearing for April 12, and directed the Department to draft "that extension order before March 11th." While the order was not circulated until April, the trial court took notes during the hearing, and the following notation appears next to Appellant's case:

| TIME NEEDED | FINAL HEARING | DISMISSAL DATE |
|---|---|---|
| ½ | 4-12 am ext | 3/11/24 |

The court coordinator made a similar notation regarding Appellant's case on her printout list for the cases to be set that day, and both documents were subsequently electronically filed.[4]

Appellant filed a motion to dismiss on April 4, and the trial court held a hearing on the motion on April 12. At the hearing, the trial court reiterated that "because [the] docket is so busy," April 12 was the earliest available date for the final hearing, then addressed Appellant's trial counsel:

> THE COURT: Okay. But, just for the record, I mean, [trial counsel], you're familiar with the Court's pre-trial practice of routinely granting extension[s] without a written motion at pre-trial, right?

---

[3]The hearing was not conducted in the presence of a court reporter—due to funding, "court reporter[s] are provided on an as-needed basis by the county"—but was recorded and subsequently transcribed.

[4]The trial court stated that "ext" means that it granted an extension.

8

[TRIAL COUNSEL]: Yes.

THE COURT: And it would not be a surprise to you if I scheduled something past the dismissal date that I granted an extension of?

[TRIAL COUNSEL]: Right.

THE COURT: And, so, from the Court's [perspective], it feels like you agreed to the [extension] because we all know that that's the Court's practice . . . and you agreed to a date beyond your client's dismissal date. Can you appreciate how that appears to the Court?

[TRIAL COUNSEL]: I can appreciate how it appears, Your Honor.

Appellant's trial counsel added that she was "under the influence of quite a few medications" when she agreed to the April 12 final hearing setting and did not realize that she was agreeing to extend the automatic dismissal date.

When the parties reconvened on April 19 for the final hearing, Appellant's trial counsel agreed that she and Appellant were aware of the initial February 12 final hearing setting and the March 11 dismissal date since the trial court issued its scheduling order in March 2023. Trial counsel conceded that she signed subsequent orders, "all of which had that dismissal date," and nevertheless planned a vacation for the week of February 12, 2024. The trial court reminded counsel that trials are scheduled "a year in advance" due to "only hav[ing] a court reporter one week out of every month."

The trial court then asked Appellant's trial counsel "to be clear on the record" regarding her knowledge of the April 12 final hearing setting. Trial counsel explained that "after [she] recovered from the February 23rd procedure, [she] then checked the Court's docket on the 27th . . . of February" and confirmed the April 12 final hearing date. The trial court noted that Appellant and her trial counsel had taken steps to prepare for the April 12 final hearing setting after the initial dismissal deadline date had passed. For example, trial counsel filed a subpoena return on

9

March 13 "for business records that [Appellant] had gone and paid for," and affidavits for those business records were filed on March 28.

Finally, Appellant's trial counsel candidly rationalized the strategic decision to delay moving for a dismissal until after March 11:

> [TRIAL COUNSEL]: In February, [Appellant] likely would have wanted an extension in order to be able to demonstrate to the Court that she has learned what she has needed to learn in order to get a monitored return. . . . That's still her goal and she would still like to have time to demonstrate to the Court. . . . But it makes no logical sense in my mind, anyway, that we would . . . object prior to the [dismissal] date in order for them to cure the issue when we have the chance at an automatic dismissal and an opportunity to get [her] kid[s] back. That's . . . why we wouldn't have done it before the date to give the opportunity for the Department to cure the issue.
>
> THE COURT: That feels like a game of gotcha.
>
> [TRIAL COUNSEL]: Kind of. It . . . sadly, I hate that that might be it.
>
> THE COURT: Which is not the intent of that legislation.
>
> [TRIAL COUNSEL]: No . . . it is not at all . . . I apologize to the Court if that is how it comes across, but . . . my advocacy for my client is for her to have her children back and not to have her rights terminated.

The trial court denied Appellant's motion to dismiss, signed the extension order with the requisite findings, and the parties proceeded to present evidence. The trial court heard the details of the aggravated assault from both Henry and Appellant, and that C.S. Jr. and Z.S. tested positive for marihuana prior to their removal. Cindy Hall, the 2INgage permanency case manager, testified that Appellant completed most of the required tasks in her service plan aside from her continued contact with Wellons and her positive drug tests. According to Hall, Appellant "[misled] the Department" because she denied her "ongoing contact with [Wellons] who engages in criminal activity by testing positive for cocaine and mari[h]uana."

10

Between the April and June trial proceedings, Appellant's hair follicle drug test from May 1, 2024 was positive for marihuana. Appellant testified that she was honest about Wellons—that "[they] haven't been in a relationship, but [that they] have been around each other." Appellant "[didn't] classify [it] as being in a relationship," and instead "call[ed] it friends with benefits." Appellant subsequently justified concealing her contact with Wellons when she testified: "I said that to really just be on the safe side because I didn't want to risk losing my kids." However, according to Appellant, Wellons has "never been a danger or threat to [her] kids." When asked about Wellons's positive drug test results, Appellant testified:

> [APPELLANT]: Positive for what?
>
> [THE DEPARTMENT]: Mari[h]uana.
>
> [APPELLANT]: Is the cocaine still in there?
>
> [THE DEPARTMENT]: . . . [I]f his most recent hair test was positive for mari[h]uana only, would that be okay with you?
>
> [APPELLANT]: I'm not saying it's okay. But, what I'm saying is the cocaine situation is the whole reason why y'all didn't want my kids around or want me around him. If the cocaine is not in his hair, then, I don't see it being an issue.

Appellant denied that Wellons has been around C.S. Jr. and Z.S. "[d]uring the course of this particular case," and said she is still seeing him because she has not had possession of her children. She asked for "the opportunity to actually have [her] kids and show them that [Wellons is] not going to be around."

Appellant also admitted to a "slight altercation" between her and her mother in 2018 or 2019 that "got kind of violent." According to Appellant, her mother was arrested for aggravated assault after striking Appellant in the head with a vase. Appellant was initially cooperative, but subsequently wanted the case dismissed because "it wasn't really as violent as the cops thought it was."

11

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of the children. This appeal followed.

### III. *Analysis*

#### A. *The Trial Court's Jurisdiction and Automatic Dismissal*

Appellant contends in her first and second issues that the trial court automatically lost jurisdiction after the initial dismissal date of March 11, 2024 had passed, thus rendering its order of termination void. Specifically, she argues that the trial court's oral pronouncement extending the dismissal date was ineffective because: (1) it was not a rendition of the trial court's ruling pursuant to Section 101.026; and (2) the trial court failed to expressly make the findings required by Section 263.401(b). *See* FAM. §§ 101.026, 263.401.

#### 1. *The Trial Court Retained Jurisdiction*

In a parental termination proceeding, a trial on the merits must commence by "the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator," otherwise the trial court is deprived of jurisdiction over the suit and the suit is automatically dismissed. *Id.* § 263.401(a). The legislature enacted Section 263.401 to encourage the prompt resolution of suits in which the Department requests termination of the parent-child relationship. *In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021). Subsection (b) provides:

> Unless the [trial] court has commenced the trial on the merits, the [trial] court may not retain the suit on the [trial] court's docket after the time described by Subsection (a) unless the [trial] court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child.

*Id.* § 263.401(b). Subsection (b) permits the trial court to retain the suit on its docket "for a period not to exceed 180 days," and requires the trial court to render an order that (1) schedules the new dismissal date on a date that does not to exceed a period of 180 days, (2) sets the new final hearing date, and (3) makes any further temporary orders for the safety and welfare of the children as are necessary to avoid further delay in resolving the suit. *Id.* However, "there is no requirement in the statute that this order be rendered before the initial dismissal date." *G.X.H.*, 627 S.W.3d at 300. The trial court need only "timely extend the automatic dismissal date before that date passes—through a docket-sheet notation or otherwise" to retain jurisdiction. *Id.* at 301.

Here, the trial court retained jurisdiction over this case when, on February 23, it made (1) its oral pronouncement in open court, and (2) its simultaneous handwritten notation that extended the dismissal date and set the new final hearing date. *See id.* at 300–01. Importantly, Appellant and her trial counsel, with knowledge of the March 11 dismissal deadline, agreed to the April 12 final hearing setting and also took affirmative steps to prepare for trial. Under these circumstances, we conclude that the trial court properly extended the automatic dismissal date prior to the date passing, and its failure to expressly predicate the extension upon the required statutory findings did not divest it of jurisdiction over the suit. *See id.* at 301; *see also In re J.S.*, 670 S.W.3d 591, 606 (Tex. 2023) ("[A] trial court's failure to make the mandatory 'extraordinary circumstances' and 'best interest' findings prior to the initial automatic dismissal deadline is a non-jurisdictional error."). Thus, because the trial court had jurisdiction over the case when it issued its final order of termination, the order is not void.

### 2. *Lack of Findings: Waiver*

For purposes of extending the dismissal deadline, Appellant complains that the trial court did not make the necessary "extraordinary circumstances" and "best

interest" findings before the automatic dismissal date passed. First, Appellant's argument that the subsection (b) findings are jurisdictional has been considered and rejected by the Texas Supreme Court. *See J.S.*, 670 S.W.3d at 605. Second, and as discussed in more detail below, Appellant's motion to dismiss—that was filed after the initial dismissal date had passed—was insufficient to preserve her complaint regarding the lack of findings. *See* TEX. R. APP. P. 33.1.

Although the required "extraordinary circumstances" and "best interest" findings are a prerequisite for extending the dismissal date, "a trial court's failure to make the mandatory Section 263.401(b) findings expressly does not affect the separate jurisdictional inquiry." *J.S.*, 670 S.W.3d at 602; *see G.X.H.*, 627 S.W.3d at 297. Thus, "complaints regarding the trial court's compliance with the requirements of subsection (b) must be preserved for appellate review." *G.X.H.*, 627 S.W.3d at 301. To view the statutory prerequisites as jurisdictional without clear legislative intent undermines the importance of ensuring a judgment's finality, which "'is even more pronounced' in cases involving child custody and parental rights." *J.S.*, 670 S.W.3d at 605 (quoting *In re D.S.*, 602 S.W.3d 504, 520 (Tex. 2020) (Lehrmann, J., concurring)). This is so because children and parents alike are harmed by the uncertainty in permitting the relitigation of parental rights terminations years after judgments are signed. *Id.*

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the relief sought and obtain a ruling. TEX. R. APP. P. 33.1. For an objection to be considered timely, it "generally must be made at the earliest possible opportunity, thereby allowing the trial court an opportunity to cure the error." *Gabel v. Gabel-Koehne*, 649 S.W.3d 590, 596 (Tex. App.—Houston [1st Dist.] 2022, no pet.). With respect to the trial court's failure to make the "extraordinary circumstances" and

14

"best interest" findings, "the parent generally must object before the initial automatic dismissal deadline passes." *J.S.*, 670 S.W.3d at 593.

In termination cases especially, "adhering to our preservation rules isn't a mere technical nicety; the interests at stake are too important to relax rules that serve a critical purpose." *In re L.M.I.*, 119 S.W.3d 707, 708 (Tex. 2003); *In re D.K.*, 696 S.W.3d 787, 793 (Tex. App.—Eastland 2024, no pet.). "[A]llowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved" to "ensure that children's lives are not kept in limbo while judicial processes crawl forward." *L.M.I.*, 119 S.W.3d at 711; *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003).

Despite Appellant's contention that the trial court "simply did not provide her attorney a reasonable opportunity to object" to the extension, Appellant's first opportunity to complain arose on February 27, at the latest. However, instead of objecting, Appellant strategically concealed alleged issues with the hope of obtaining a dismissal. In fact, her trial counsel admitted to playing "a game of gotcha." Nevertheless, Appellant blames the Department and the trial court for "fail[ing] to use best[]practices," and claims that "she was under no obligation to . . . assist them in terminating her parent-child relationship." Be that as it may, our holding today simply has the effect of requiring parents to achieve reunification through proper means. With the best interest of the children in mind, we will not reward Appellant for "playing fast and loose with the judicial system for [her] own benefit." *George Fleming and Fleming & Assoc., L.L.P. v. Wilson*, 694 S.W.3d 186, 192 (Tex. 2024) (quoting *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (discussing the doctrine of judicial estoppel)).[5] Permitting

---

[5]Appellant notes that the court in *J.S.* declined to decide whether a parent who opposes an extension must object before the automatic dismissal date passes. *See J.S.*, 670 S.W.3d at 605 n.16. Because the evidence shows that Appellant was in favor of and agreed to an extension, we, too, need not address this issue.

15

Appellant's "wait and see" approach invites gamesmanship, discounts the best interest of the children, and thwarts the legislature's clear intent to promote the expeditious resolution of termination suits. *See In re A.S.*, No. 07-20-00350-CV, 2021 WL 1774102, at *1 (Tex. App.—Amarillo May 3, 2021, no pet.) (mem. op.) (citing *Ward v. Lamar Univ.*, 484 S.W.3d 440, 450 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("no litigant should feel free to gamble on obtaining a favorable ruling on the merits while concealing alleged issues in the event of a loss")); *cf. Estate of Aguero*, 692 S.W.3d 622, 627 (Tex. App.—Corpus Christi–Edinburg 2023, pet. denied).

Because Appellant chose not to object to the trial court's oversight to issue subsection (b) findings before March 11, she has abandoned her chance to complain about it on appeal. *See J.S.*, 670 S.W.3d at 593; *G.X.H.*, 627 S.W.3d at 299; *M.P. v. Tex. Dep't Family & Protective Servs.*, No. 03-22-00163-CV, 2022 WL 4281617, at *5 (Tex. App.—Austin Sept. 16, 2022, pet. denied) (mem. op.).

Finally, even had Appellant timely objected to the lack of subsection (b) findings, the trial court cured its error prior to the commencement of the final hearing, and Appellant has failed to show any resulting harm. To show harm, Appellant must have demonstrated that the error "probably caused the rendition of an improper judgment" or "prevented [her] from properly presenting the case to the court of appeals." *See* TEX. R. APP. P. 44.1(a); *In re J.N.*, 670 S.W.3d 614, 619 (Tex. 2023).

On this record, we can discern that Appellant had no intention of proceeding to trial before the automatic dismissal date passed. In January 2024, she requested additional time to "work[] the service plan" and prove that she could continue "testing negative." Her trial counsel, despite being aware of the date of the final hearing, also planned a vacation that directly conflicted with the February 12 final hearing setting. On February 23, Appellant's trial counsel agreed to reset the final

hearing to April 12, and she and Appellant thereafter took clear, affirmative steps to prepare for trial. Even after trial commenced, Appellant moved for a continuance "to go to mediation . . . in hopes that [the parties] could come up with some sort of settlement option." Appellant's actions and her trial counsel's admissions reveal that they never opposed the extension, and deferred challenging the extension's validity until they believed that it would result in a dismissal. Consequently, there is no indication that the trial court's failure to expressly make the "extraordinary circumstances" and "best interest" findings probably caused the rendition of an improper judgment or prevented Appellant from properly presenting her case to this court. *See* TEX. R. APP. P. 44.1(a).

Accordingly, we overrule Appellant's first and second issues.

B. *Termination under Subsections (D) and (E) – Endangerment*

Appellant contends in her third issue that the evidence is legally and factually insufficient to establish endangerment under grounds (D) and (E) because: (1) "there was no testimony at trial that the children were even present during the altercation" with Henry; (2) "this single incident" was not "an endangering pattern of conduct"; (3) "there was just a single positive test for each child" showing low levels of marihuana; and (4) "there is a growing recognition by the State that cannabis presents a lower level of risk to children."

Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either ground). Thus, if we conclude that the evidence is legally and factually sufficient to uphold the trial

court's finding as to either subsection (D) or (E), we need not address whether the evidence supports termination under subsection (O).  *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1.  And when the evidence pertaining to both subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings.  *See In re A.L.S.*, 660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet. denied); *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," or "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."  FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014).  "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child."  *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)).  The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," but "does not require actual harm."  *Id.*; *see also In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).

To terminate a parent's rights for endangerment under subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child, nor must the child actually suffer injury.'"  *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024).  "[T]ermination under [subsection] (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment."  *C.E.*, 687 S.W.3d at 310.  Endangerment under subsection (E), in contrast, focuses on the parent's

conduct, and whether the endangerment of the child's well-being was the direct result of the parent's acts, omissions, or failures to act. *In re J.S.*, 687 S.W.3d 541, 550 (Tex. App.—Eastland 2024, no pet.). "A parent's drug use, violence, or other abuse may make the child's environment endangering to the child." *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.). "A parent acts 'knowingly' when the parent is aware that the environment creates a potential danger to the child but the parent disregards that risk." *Id.* Because conditions or surroundings cannot endanger a child unless that child is exposed to them, the relevant time frame for evaluating subsection (D) is before the child's removal. *J.W.*, 645 S.W.3d at 749.

Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *J.S.*, 687 S.W.3d at 550; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277. A parent's actions prior to and after the children's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("endangering conduct may include a parent's actions before the child's birth and may relate to the parent's actions while the parent had possession of other children"). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child).

Drug use and its effects on the parent's life and ability to parent may also demonstrate an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345; *In re*

*A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and incapable of parenting."). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *R.R.A.*, 687 S.W.3d at 278 (emphasis added). "A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.* (quoting *J.O.A.*, 283 S.W.3d at 345). Thus, under certain circumstances, such as the ones that are present in this case, "any drug activity may render the parent incapable of parenting." *J.S.*, 687 S.W.3d at 554 (citing *R.R.A.*, 687 S.W.3d at 278).

Appellant flatly misrepresents that there is no proof her children were present when she threatened to shoot Henry. To the contrary, Appellant's testimony established that the reason for removal was "[her] kids being present" during the "fight that [she] had with [Henry]." Appellant also "denies that her children were endangered" when she "retreat[ed] to her vehicle to retrieve a weapon" "after [Henry] threatened continued violence." Appellant's understated portrayal of the events distorts the nature of her reprehensible conduct. The evidence showed that she and her children went with Wellons to pick up his son, and Appellant aggressively exited the vehicle to charge at Henry. Henry did not "even know [they] were going to fight," so she did not participate other than "defending [herself]." When the two were separated, Appellant returned to the vehicle—presumably where her children were—to retrieve a gun, point it at Henry, and threaten to shoot her. In this regard, the trial court could properly consider Appellant's unapologetic and violent criminal conduct—when she brandished and threatened to use a deadly weapon—in finding that she knowingly endangered the physical and emotional well-

20

being of her children. *See In re N.J.H.*, 575 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[A]busive and violent criminal conduct by a parent can also produce an environment that endangers a child's well-being, and evidence that a person has engaged in such conduct in the past permits an inference that the person will continue [to engage in] violent behavior in the future.").

We likewise observe that Appellant mischaracterizes the aggravated assault that she committed against Henry as being her "single incident" of violent conduct, and again ignores her admission concerning the domestic violence that occurred between her and her mother. Nevertheless, Appellant's past violent behavior aside, the trial court could certainly infer endangerment based on Appellant's commission of a violent felony offense—aggravated assault with a deadly weapon—with three young children in the immediate vicinity. *See J.F.-G.*, 627 S.W.3d at 315–17 (a parent's criminal conduct that may result in incarceration is relevant to the endangerment analysis); *In re E.J.*, No. 14-23-00387-CV, 2023 WL 8043686, at \*9 (Tex. App.—Houston [14th Dist.] Nov. 21, 2023, no pet.) (mem. op.) (inappropriate, abusive, or unlawful conduct by a parent can create an environment that endangers the physical and emotional well-being of children under subsection (D)); *In re M.J.*, No. 02-23-00026-CV, 2023 WL 3643673, at \*11 (Tex. App.—Fort Worth May 25, 2023, no pet.) (mem. op.) ("Father's lack of desire to stop using mari[h]uana could continue to endanger" the child, and "carrying a loaded gun around his other children . . . created both emotional and physical risks for" the child); *see also In re A.J.A.D.*, No. 01-22-00521-CV, 2022 WL 17813763, at \*8–11 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, pet. denied) (mem. op.) (considering the mother's drug use, criminal convictions, and indifference as evidence of endangerment).

The trial court also properly considered Appellant's ongoing drug use and the children's exposure to drugs. *See N.J.H.*, 575 S.W.3d at 831–32 ("drug activity can constitute endangerment even if it transpires outside the child's presence"). The

children's positive drug tests permit the strong inference that they were exposed to marihuana through Appellant's illegal drug use, which creates and is indicative of an endangering environment. *See In re N.T.*, No. 02-24-00067-CV, 2024 WL 2066375, at *5 (Tex. App.—Fort Worth May 9, 2024, no pet.) (mem. op.) (affirming a conduct-based endangerment finding based in part on the children testing positive for marihuana and cocaine upon removal). Despite Appellant's denials of her drug use, the Department noted that her apartment had a strong odor of marihuana when it opened its investigation, and Appellant consistently tested positive for marihuana and cocaine throughout the pendency of this case. As such, the trial court was permitted to disbelieve Appellant's testimony and form a firm conviction or belief that Appellant used illegal drugs before and after the children's removal. *See In re D.J.W.*, 394 S.W.3d 210, 222 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (post-removal drug use increases the risk that the parent-child relationship will be permanently severed, thus endangering the emotional well-being of the child).

Moreover, Appellant repeatedly disregarded the Department's concerns that Wellons posed a danger to the children. Wellons tested positive for marihuana and cocaine, was suspected of distributing cocaine, and was placed on deferred adjudication community supervision for assaulting Henry in August 2021. According to Hall, Wellons's "biggest areas of noncompliance" with his own family plan of service were "[o]ngoing substance abuse," "misrepresent[ing] day-to-day interactions," and "just lying." Here, the trial court was permitted to consider Appellant's unwillingness to recognize the potential danger to her children in determining whether she engaged in an endangering course of conduct. *See* FAM. § 161.001(b)(1)(E); *C.E.*, 687 S.W.3d at 314 (circumstantial evidence, "taken together," was legally sufficient to support the finding of endangerment under subsection (E)); *In re S.V.*, No. 02-23-00188-CV, 2023 WL 5967890, at *9 (Tex. App.—Fort Worth Sept. 14, 2023, no pet.) (mem. op.) (affirming a conduct-based

endangerment finding based in part on evidence that "both drugs and drug users were finding their way into the children's home"); *M.C. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-17-00104-CV, 2017 WL 3379114, at *5 (Tex. App.—Austin Aug. 1, 2017, no pet.) (mem. op.) (considering a parent's continued association with "people who smoke marihuana all the time" as evidence of endangerment).

Rather than showing a modicum of remorse for her children's positive drug tests, Appellant submits that exposing her children to marihuana is relatively benign and of no consequence, and thus should not have resulted in the termination of her parental rights. She looks to Section 161.001(c)(4), which prohibits terminating a parent-child relationship based on a parent "provid[ing] or administer[ing] low-THC cannabis to a child for whom the low-THC cannabis was *prescribed* under Chapter 169, Occupations Code." *See* FAM. § 161.001(c)(4) (emphasis added); TEX. OCC. CODE ANN. §§ 169.001–.005 (West 2022) (Authority to Prescribe Low-THC Cannabis to Certain Patients for Compassionate Use). However, her argument fails because there is no evidence that her children were *prescribed* low-THC cannabis by the proper authority. The unlawful use of any form of cannabis in the presence of one's children, regardless of the amount, and the children's resulting exposure to it, is not tantamount to the cannabis being *prescribed* to them for their benefit. Thus, Section 161.001(c)(4) is inapplicable here, and we decline to construe this statute beyond its plain and unambiguous meaning. *See Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 338, 326 (Tex. 2017) (reviewing courts "take statutes as we find them and refrain from rewriting the Legislature's text").

Furthermore, we reject Appellant's argument that exposing her children to marihuana through her own illegal use is excusable. It is unlikely that a rational trier of fact would accept Appellant's suggestion that parents may illegally expose their

young children to controlled substances without consequences. Appellant's contention reinforces, rather than undermines, the trial court's finding of endangerment. So, too, does her assertion that the children's "low" levels of marihuana exposure should render her beyond reproach. Appellant's brazen indifference to the substantial risks that her behavior posed to her children support a rational inference that she would continue this behavior if the children were returned to her care. *See N.J.H.*, 575 S.W.3d at 831–32 ("A child is endangered if his [or her] environment creates a potential for danger that the parent disregards."); *In re E.P.C.*, 381 S.W.3d 670, 683–84 (Tex. App.—Fort Worth 2012, no pet.) (the parent's failure to provide proper nutrition, leaving the child alone, and his lack of remorse for doing so was evidence of endangerment). And, despite Appellant's lack of concern, "test[ing] positive for mari[h]uana shortly before the final hearing commence[s]" permits a reasonable factfinder to find that endangerment exists by clear and convincing evidence. *R.R.A.*, 687 S.W.3d at 277–78 (quoting *J.O.A.*, 283 S.W.3d at 346).

Here, Appellant's voluntary, deliberate, and conscious acts constitute more than a single instance of conduct. The trial court could have rationally formed a strong conviction or belief that Appellant's actions created "conditions or surroundings which endangered [the children]'s physical or emotional well-being." FAM. § 161.001(b)(1)(D); *see A.L.S.*, 660 S.W.3d at 264. Thus, we conclude that the evidence is legally and factually sufficient to establish that Appellant was aware of the children's endangering environment prior to their removal and in turn consciously disregarded it. *See* FAM. § 161.001(b)(1)(D). We likewise conclude that the evidence is legally and factually sufficient to support the trial court's finding that Appellant engaged in a continuing course of conduct that endangered the physical or emotional well-being of C.S. Jr. and Z.S. *See id.* § 161.001(b)(1)(E).

24

Accordingly, we overrule Appellant's third issue. In light of our holding, we need not address Appellant's fourth issue in which she challenges the trial court's finding under subsection (O). *See* TEX. R. APP. P. 47.1; *J.S.*, 687 S.W.3d at 551.

C. *The Best Interest of the Child Determination*

In Appellant's fifth issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of C.S. Jr. and Z.S.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Indeed, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Affording due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's

parental rights was in the best interest of C.S. Jr. and Z.S. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children."). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered by the trial court in its best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Therefore, the trial court could properly consider Appellant's endangering conduct in determining whether the termination of her parental rights was in the best interest of C.S. Jr. and Z.S. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

As discussed above, Appellant exposed her children to drug use and violent behavior. Appellant's marihuana use not only affected her parenting abilities—her children tested positive for marihuana prior to their removal. *See C.H.*, 89 S.W.3d at 27–28 (past performance as a parent "could certainly have a bearing on [a parent's] fitness to provide for" her child). Appellant continued testing positive for illegal substances after the children were removed from her care. At the time of the final hearing, she was still subject to prosecution for the second-degree felony offense—aggravated assault with a deadly weapon—that she committed in the presence of her children. *See* PENAL § 22.02(a)(2), (b). Such conduct undoubtedly "exposes the children to the possibility that [Appellant] may be impaired or

26

imprisoned," which weighs in favor of finding that termination of Appellant's parental rights was in C.S. Jr.'s and Z.S.'s best interest. *See J.S.*, 687 S.W.3d at 551; *In re Z.J.B.*, No. 14-18-00759-CV, 2019 WL 347474, at *5, 7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.) (a parent's single positive drug screen and his failure to submit to three additional drug screenings suggested continued illegal drug use by him and weighed in favor of the trial court's best-interest finding); *see also In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("Parental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest.").

Although "[e]vidence about placement plans and adoption are, of course, relevant to best interest," a "lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *C.H.*, 89 S.W.3d at 28. Otherwise, terminations would regularly be subject to reversal on the sole ground that "an adoptive family has yet to be located." *Id.* Hall testified that despite certain issues with A.H. as a caregiver, the Department is willing to continue working with her. Furthermore, A.H. is willing to adopt the children, but the Department has "backup plans" for placement. *See Holley*, 544 S.W.2d at 371–72.

Appellant, on the other hand, has not demonstrated the ability to provide her children with a safe, drug-free home environment. The record supports the trial court's implied finding that Appellant failed to adequately address her drug issues based on her positive drug tests that coincided with the final hearing. *See J.O.A.*, 283 S.W.3d at 346 ("evidence of improved conduct, especially of short-duration, does not conclusively negate . . . a long history of drug use and irresponsible choices"). We thus conclude that the lack of a permanent adoption plan does not weigh against a best-interest finding and the termination of Appellant's parental rights. *See C.H.*, 89 S.W.3d at 28; *In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *see also In re A.J.W.*, No. 04-19-

00346-CV, 2019 WL 6333468, at *6 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.) ("The [trial] court could have rationally concluded that [the mother] is unable to protect her children or to provide them a safe and stable environment because she minimizes her drug problem."); *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *7 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.) (The mother's "choice to minimize her past drug use" was a factor of "particular significance" in the best-interest analysis.).

The trial court was likewise permitted to consider that Appellant refused to dispense with her drug-related conduct by continuing to associate with and surround herself with others who used drugs. *See, e.g.*, *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Appellant's empty commitment to "keep [Wellons] separated from [her] kids" if they were returned to her was properly disregarded—a parent must address the reasons for removal and demonstrate the capability to provide the children with a safe and stable environment *before* the children are returned. *See* FAM. § 263.102 (Service Plan; Contents), § 263.306(a–1)(6) ("At each permanency hearing . . . the court shall . . . determine whether to return the child . . . if the child's parents are willing and able to provide the child with a safe environment."). Hall communicated to Appellant the need to "change her behavior" to achieve reunification. She explained that Appellant was "offered services . . . for over a year," "underst[ood] the expectations" of the Department and the trial court, but was only "willing to comply with things that [were] not related to interrupting her relationship with [Wellons]." *See E.C.R.*, 638 S.W.3d at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination.").

In addition to misrepresenting the status of her relationship with Wellons, Appellant attributed her positive drug test results to being "around people . . . that's smoking or whatever . . . weed smoke is going to get in my hair." Appellant

28

exhibited nothing but apathy and nonchalance about her own drug abuse and her children's positive drug tests. For example, she expressed at the final hearing that testing positive for marihuana is not "a big issue." Appellant maintains on appeal that her "youth and inexperience" "led her to resolve her differences with [Henry] inappropriately," and to "fail[] to fully consider the consequences of using a widely accepted but still illegal substance to relax at the end of stressful days." Illegal or not, Appellant was prohibited from using marihuana, associating with others who engaged in drug use, or any form of criminal activity. As such, Appellant's substantial compliance with her service plan does not justify her deceit and pattern of conduct that could lead to "a life of uncertainty and instability" for C.S. Jr. and Z.S. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). The trial court, as the factfinder, was permitted to determine that Appellant was not excused from her acts and omissions. *See In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (A parent's "failure to provide valid excuses for her behavior weighs in favor of the trial court's finding that termination of her parental rights is in the child's best interest.").

Appellant emphasizes the children's desires to return to her care. A child's desire to reside with a parent "is an important consideration in determining the best interest of the child," but it will "not override or outweigh evidence of danger to the child." *J.S.*, 687 S.W.3d at 553; *F.M.E.A.F.*, 572 S.W.3d at 732. While we do not ignore a child's desires, it is not binding on the trial court; it is only one factor that the trial court considers in its best-interest analysis. *See* FAM. § 153.009(c); *Holley*, 544 S.W.3d at 372; *see also Hart v. Kozik*, 242 S.W.3d 102, 109 (Tex. App.—Eastland 2007, no pet.); *cf. F.M.E.A.F.*, 572 S.W.3d at 732 ("A child's love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs."). Here, given Appellant's violent behavior, drug use, the exposure of the children to marihuana and other illegal substances, and persistent

dishonesty with the Department and the trial court, this factor does not weigh against a finding of termination. *See Hart*, 242 S.W.3d at 109. The trial court could have rationally concluded based on Appellant's endangerment of her children that relinquishing the children to Appellant's care would pose a substantial risk of harm to the children. *See In re Z.G.*, No. 02-23-00038-CV, 2023 WL 3521848, *5 (Tex. App.—Fort Worth May 18, 2023, pet. denied) (mem. op.) (the parent's denials and refusal to acknowledge the pervasive "drug use of the family unit" weighed in favor of terminating his parental rights).

Finally, Appellant contends that her status as a "young twenty-five-year-old" "struggling to raise two children as a single parent" further mitigates her conduct before and after the children's removal. Although we are sympathetic to the struggles of young single parents, it is the best interest of the children that "shall always be the primary consideration" in these cases. *See* FAM. § 153.002 (West 2014); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *see also In re R.M.C.*, No. 04-18-00706-CV, 2019 WL 1370367, at *3 (Tex. App.—San Antonio Mar. 27, 2019, pet. denied) (mem. op.) ("Although we are sympathetic to the parents' efforts to regain custody . . . termination of . . . parental rights is in [the child's] best interest."). The State honored the constitutionally-protected parent-child relationship until Appellant made it clear that she prioritized her own interests over protecting her children. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003); *see also A.J.D.-J.*, 667 S.W.3d at 823 ("[S]ignificant evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in a child's best interest."). Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to C.S. Jr. and Z.S. now and in the future, Appellant's parental abilities, and Appellant's history with the Department, we hold that the evidence is legally and factually sufficient to support the trial court's finding that

termination of Appellant's parental rights is in the best interest of C.S. Jr. and Z.S. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's fifth issue.

## IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


December 12, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.